THERMORAMA, INC. v. RAY SHILLER AND OTHERS.

135 N. W. (2d) 43.

April 23, 1965—No. 39,656.

80

*Firestone, Fink, Krawetz, Miley & O'Neill,* for relators.
*Harold J. O'Loughlin,* for respondent.

KNUTSON, CHIEF JUSTICE.

A writ of prohibition has been issued upon the application of two defendants.

Plaintiff commenced this action to recover damages for an alleged conspiracy by defendants to ruin plaintiff's business. It is plaintiff's claim that defendants were bound by an oral contract to restrict themselves to the manufacture of various garments exclusively for plaintiff; that they were given secret information under a fiduciary relationship with plaintiff; and that unbeknown to plaintiff they had conspired together to destroy plaintiff's business by setting up a rival business of their own. After the commencement of the action, plaintiff moved for permission to inspect, copy, and photograph a large variety of defendants' business records. It is not necessary to detail the nature thereof in this opinion, but it is sufficient to say that they included practically all of defendants' business records. It is plaintiff's claim that it requires an examination of these records for the purpose of establishing the conspiracy. Defendants opposed the motion on the grounds that the items covered by plaintiff's discovery proceedings related mainly to damages; that plaintiff should first be compelled to establish that defendants were bound by a contract not to compete with plaintiff; and that such discovery would have no legitimate purpose in connection with the trial of the lawsuit but would only serve to give plaintiff, who is in competition with defendants, access to defendants' valuable business secrets, such as customer lists, costs, methods of manufacturing and selling, financial strength, and identity of representatives. It is defendants' position, as shown by an affidavit in opposition to the motion, that there was no restrictive agreement between plaintiff and defendants; that defendant Samco manufactured various garments for its own customers as well as for plaintiff; that it was known to the trade and to plaintiff that Samco was in such open competition; that plaintiff had never complained about defendants' distributing to other retailers; that it is common practice to represent competing concerns; that the salesmen who did the actual selling were independent manufacturer's representatives with their own customers; and that to disclose these records to plaintiff would cause irreparable harm to defendant Samco.

The motion for leave to examine these records was heard before the Honorable Ronald E. Hachey of the Ramsey County District

Court on April 7, 1964. On July 16, 1964, Judge Hachey issued his order granting plaintiff's motion, stating in a short memorandum that he felt plaintiff's request was based on good cause. Defendants failed to comply with the court's order, and on July 23, 1964, the Honorable Albin S. Pearson issued an order to show cause why defendants Shiller and Samco should not be punished for contempt for failing to comply with the order of Judge Hachey. On July 30, 1964, the matter came before the Honorable Robert V. Rensch on the order to show cause. Judge Rensch found defendant Shiller in contempt of court and imposed a sentence of 30 days in jail unless he complied with the order by August 5, 1964. On August 4, 1964, a motion to stay the execution of the above order finding defendant Shiller in contempt was heard by Judge Hachey, and on August 5, 1964, he refused to vacate the order of July 16 but did stay enforcement of the order for a period of 30 days. On September 22, 1964, defendants obtained a writ of prohibition from this court restraining further proceedings relative to the enforcement of the July 16 order until the matter could be heard. In his return to the writ, Judge Hachey says that his order for production of the documents sought to be examined by plaintiff was based upon good and reasonable grounds; that defendants requested for the first time on August 4 that a finding of conspiracy be made before the production of the documents was required; and that this request was denied because he was of the opinion that the issue of conspiracy could not be separated from the issue of damages and could best be resolved by an examination of the documents.

Rule 34, Rules of Civil Procedure, provides in part:

"Upon motion of any party showing good cause therefor * * * and subject to the provisions of Rule 30.02, the court * * * may (1) order any party to produce and permit the inspection * * * of * * * documents * * * relating to any of the matters within the scope of the examination permitted by Rule 26.02 * * *."

Under this rule, as qualified by Rule 30.02, when a defendant is concerned about having his trade secrets discovered, he should request that the district court provide such safeguards as are necessary to pro-

tect him. In Snyker v. Snyker, 245 Minn. 405, 407, 72 N. W. (2d) 357, 359, we said:

"Where records and documents, which are the object of discovery and inspection procedures, contain both privileged and nonprivileged evidence, the trial court, in the exercise of a sound discretion, may permit their inspection *subject to express conditions and requirements which reasonably shield and protect the person for whose benefit the privilege exists*. That this may be effectively done is illustrated by the analogous cases which have arisen under Rule 34, as modified by Rule 30(b), of the Federal Rules of Civil Procedure with respect to the safeguarding of secret trade or manufacturing processes."

The court further found in that case that by limiting disclosure to a delegate of the trial judge (an accountant) the privilege was amply protected. The writ of prohibition which had been issued was discharged.

■ Normally, the trial court has a wide discretion in determining whether the discovery rules are being used by a litigant in bad faith to unreasonably annoy, embarrass, oppress, or injure a party or the witnesses, and also has a wide discretion in protecting the parties and witnesses from such abuses. Webster v. Schwartz, 249 Minn. 224, 81 N. W. (2d) 867; Baskerville v. Baskerville, 246 Minn. 496, 75 N. W. (2d) 762.

■ Rule 34 requires as a prerequisite to the issuance of an order permitting discovery that the moving party show good cause. This rule is a broad one, but it is subject to Rule 30.02, which provides that the court may make any order which justice requires to protect a party from annoyance, expense, embarrassment, or oppression.

■ Existence of "good cause" within the meaning of Rule 34 is largely a question of fact. Determination of that issue should be left to the trial court. Under the customary rule, we will not interfere with the trial court's determination unless it clearly appears that the order has no reasonable support.

■ Whether prohibition should be used to restrain the trial court from an abuse of this wide discretionary power has been the source of considerable discussion. Prohibition is an extraordinary remedy and

should be used only in extraordinary cases. It will be used only in those cases where it appears that the court is about to exceed its jurisdiction or where it appears the action of the court relates to a matter that is decisive of the case; where the court has ordered the production of information clearly not discoverable and there is no adequate remedy at law; or in rare instances where it will settle a rule of practice affecting all litigants.

In Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. (2d) 688, 44 A. L. R. (2d) 535, we discussed the harshness of the rule which requires an attorney to subject himself to a finding of contempt and then appeal from the contempt order before a pretrial order can be reviewed, and we there suggested that possibly a better remedy would be to permit the use of a writ of prohibition so that the matter could be reviewed before irreparable harm had been done.

In Jeppesen v. Swanson, 243 Minn. 547, 68 N. W. (2d) 649, this procedure was used, and again in Boldt v. Sanders, 261 Minn. 160, 111 N. W. (2d) 225, we issued a writ of prohibition to review the action of the trial court but discharged the same when we determined that the trial court had not abused its discretion. However, the use in these limited areas does not mean that this court will review all pretrial orders in this manner. In Ex parte Fahey, 332 U. S. 258, 259, 67 S. Ct. 1558, 1559, 91 L. ed. 2041, 2043, Mr. Justice Jackson, speaking for the court, said with respect to the use of extraordinary writs in an area similar to this:

"Mandamus, prohibition and injunction against judges are drastic and extraordinary remedies. We do not doubt power in a proper case to issue such writs. But they have the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants before him. These remedies should be resorted to only where appeal is a clearly inadequate remedy. We are unwilling to utilize them as a substitute for appeal. As extraordinary remedies, they are reserved for really extraordinary causes."

The other resolution of the problem poses the harsh requirement that an attorney must subject himself to a contempt finding before he can obtain any relief, as we have pointed out in the cases mentioned

above. Where to draw the line between these two undesirable results so as to do the least harm is a problem not easily solved. But the bar must be advised that it is only in exceptional cases that we will interfere with the trial court's action in this field. Much must be left to the exercise of a sound judicial discretion by the trial court. This court has neither the time nor the inclination to undertake a review of any other than exceptional pretrial orders prior to trial.

In this case, the trial court's order is a sweeping one, but the nature of the case is such that it undoubtedly was necessary to examine most, if not all, of the records covered by the order to get at the facts. At best, it would be difficult for the trial court, and almost impossible for us, to sift what was discoverable from what may not have been necessary for the purpose intended on the basis of the affidavits submitted in support of and in opposition to the application for relief. We are confident that, upon proper application, the trial court will provide such protective measures as may be necessary to accomplish the legitimate objects of plaintiff's search and at the same time protect such trade secrets of defendants as plaintiff ought not to be permitted to see, and to exclude such other information as plaintiff is not entitled to have.

■ When it clearly appears that all the documents a litigant wishes to examine relate only to an issue such as damages, as to which he is entitled to discovery after establishment of a prima facie case that he has a cause of action, it is not unreasonable to require the party seeking the aid of the court to make such showing before he is granted carte blanche authority to examine a competitor's business records. However, cases do arise where the issue of damages is so related to the issue of liability that they cannot be separated. The trial court felt that this was such a case, and we are inclined to agree. There being no written contract between the parties, such limited agreements as exist, if there are any, and a breach of them, can probably only be shown by the business dealings of defendants with other parties. Under these circumstances, it was within the discretion of the trial court to order an inspection of these business records. That there may be more than suspicion in some of plaintiff's claims might be evident from Ther-

morama, Inc. v. Buckwold, 267 Minn. 551, 125 N. W. (2d) 844, which involved an application for an injunction to restrain defendant, J. (Jack) Buckwold, from doing business with plaintiff's competitors.

■ Ordinarily, before discovery will be denied on the grounds that business secrets of a competitor may be disclosed, the party making such claim must also show that he is acting in good faith in refusing to permit examination of his records. In an Annotation on this subject in 17 A. L. R. (2d) 390, we find the following:

"Clearly, before the court will make any effort to protect trade secrets from disclosure by way of discovery or inspection, it must appear that the party alleging that he will be harmed by the disclosure of such information is acting in good faith, and not merely using the claim of trade secrets as a means of avoiding legitimate disclosures."

In this case we are convinced that the matter of compelling defendants to open their business records to plaintiff, subject to such protective orders as may be necessary upon a proper application of defendants, should be left to the sound discretion of the trial court.

The writ is accordingly discharged.