**Ronald J. FAHY, Respondent,**

v.

**Charles John TEMPLIN and The City of Minneapolis, Appellants.**

No. C7–84–1381.

Court of Appeals of Minnesota.

Jan. 22, 1985.

Review Denied April 18, 1985.

Robert J. Munson, Minneapolis, for respondent.

Robert J. Alfton, Minneapolis City Atty., David M. Gross, Asst. City Atty., Minneapolis, for appellants.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Ronald Fahy recovered a jury verdict of $78,000 in a personal injury action against Charles Templin and the City of Minneapolis. The trial court offset the verdict by the no-fault benefits Fahy had received for lost income and for the medical expense found by the jury to be necessarily incurred by Fahy, which amount was less than that actually paid. Templin and Minneapolis appeal, contending the trial court erred in not deducting the full amount of medical benefits paid to Fahy. We affirm.

## FACTS

A Minneapolis city truck driven by Charles Templin struck Ronald Fahy's car. Fahy's insurer paid him no-fault benefits of $40,000 for medical expenses and $20,000 for lost wages on two auto policies maintained by Fahy.

Templin and Minneapolis admitted liability and the issue of damages was submitted to the jury. The jury found that Fahy

incurred $18,000 of necessary medical expenses as a result of the accident and an award of $78,000 would fairly compensate him for injuries and damages, including medical and hospital expenses and loss of earnings.

Templin and Minneapolis then requested the court, pursuant to Minn.Stat. § 65B.51, subd. 1 (1982), to deduct the $60,000 no-fault benefits received from the $78,000 verdict. The trial court offset the verdict by $20,000 for lost income benefits and $18,000 for necessary medical expense benefits, but refused to deduct the additional $22,000 paid for medical expenses. Templin and Minneapolis appeal.

## ISSUE

Where no-fault medical expense benefits paid to an injured person exceed those found reasonably necessary by a jury, should the excess payment be deducted from the total jury award?

## ANALYSIS

Templin and Minneapolis contend that Minn.Stat. § 65B.51, subd. 1 (1982) requires the full amount of medical expense benefits paid to Fahy by his insurer to be deducted from the verdict against Templin and Minneapolis. Anything less, they argue, results in Fahy being overcompensated for his medical expenses. The offset provision states:

**Deduction of basic economic loss benefits.** With respect to a cause of action in negligence accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by sections 65B.41 to 65B.71, *there shall be deducted from any recovery the value of basic or optional economic loss benefits paid or payable * * *.*

Minn.Stat. § 65B.51, subd. 1 (1982) (emphasis added).

The Minnesota Supreme Court has addressed this issue in *Tuenge v. Konetski*, 320 N.W.2d 420 (1982), where no-fault lost wage benefits paid to the plaintiff exceeded those found by the jury. The court stated:

[T]he offset provision, like subrogation, should not operate until plaintiff has been fully compensated. In this case, however, the trial court applied the offset provision so as to invade items of damage for which plaintiff has not yet been compensated. This occurred because the jury award for loss of wages up to the time of trial was only $3,063.60, while plaintiff's insurer paid her $11,115.79 for the same item of damage. As a result, when the trial court deducted the full $11,115.79 it effectively invaded plaintiff's recovery for uncompensated items of damage such as future wage loss and non-economic detriment. This result not only undermines the major thrust of the Act to promote full and not over-compensation, but also undermines a general state policy interest in seeing that tort victims are fully compensated.

*Id.* at 422 (footnote and citations omitted).

Adopting the *Tuenge* reasoning, we hold that only the amount found by the jury to be necessary medical expenses should be deducted from Fahy's recovery, otherwise, there would be an invasion of Fahy's recovery for other uncompensated items of damage. This may result in some overcompensation for Fahy, but, as the *Tuenge* court noted:

This situation is not unique nor does it necessarily result from the fact that plaintiff's insurer overpaid her with respect to loss of wages. Rather, it can be expected that this disparity between wage loss benefits paid by an insurer and wage loss damages awarded by a jury may frequently arise. At trial, wage loss must be proved in an adversarial setting by a preponderance of the evidence. There is no such standard for the collection of basic economic benefits. At any rate, even if plaintiff's insurer did overcompensate her, this is a matter between plaintiff and her insurer and does not influence our construction of the Act.

*Id.* at 422 n. 2.

Templin and Minneapolis also contend the trial court's decision could expose them

to liability for more than the $78,000 verdict. Because the truck driven by Templin was a commercial vehicle, Fahy's no-fault insurer could bring an independent indemnity action against Templin's and Minneapolis' insurers through arbitration. Minn. Stat. § 65B.53, subds. 1 and 4 (1982). Since the arbitration panel would not be bound by the jury's findings, Templin's and Minneapolis' insurers could ultimately be required to indemnify Fahy's insurer for the $22,000 of medical benefits paid to Fahy in excess of those found medically necessary by the jury. This would result in a total pay-out of $100,000 ($40,000 to Fahy; $60,000 to reparation obligor).

The Minnesota Supreme Court recognized and accepted such a possibility in *National Indemnity Co. v. Farm Bureau Mutual Insurance Co.*, 348 N.W.2d 748 (Minn.1984). In *National Indemnity*, the supreme court held that a no-fault insurer who had paid benefits to its insured was not precluded from seeking indemnity even though a jury found the insured sustained no damages. In upholding the arbitration panel's award, the court stated:

> To hold in this case that the jury verdict was conclusive upon the arbitrators would encourage litigants expecting a favorable verdict to stall out the arbitration process. * * *

> \* \* \* \* \* \*

> National's complaint really is that the arbitrators should have reached the same conclusion as the jury did * * *. But National had the same opportunity to convince the arbitrators as they had with the jury. It can be argued that the arbitrators actually have superior expertise and *their* decision should be followed. However, the legislature has determined that the actions should be independent. * * *

> Here, National has merely encountered conflicting findings from a jury and an arbitration panel. Even though the jury found that the *insured* had suffered no loss from the accident, the arbitrators found that *Farm Bureau* had suffered loss and was entitled to reimbursement. * * *

*Id.* at 751–52 (emphasis in original).

## DECISION

We affirm the trial court's judgment in favor of Fahy for $40,000. Where the no-fault medical expense benefits paid to the victim of an automobile accident exceed those found reasonably necessary by the jury, the victim's recovery should be reduced by only the amount found reasonable by the jury. Reducing the victim's recovery by the amount of medical benefits actually received would invade the jury award for other uncompensated items of damage.

Affirmed.